United States District Court
Southern District of Florida
Case Number 10-CV-60162-Altonaga-Brown

Keren Peters
                Plaintiff
vs.

The Keyes Company
                Defendant

**Motion to Compel Arbitration and Stay Action
or
Dismiss Count 2 of Complaint and Supporting Memorandum of Law**

The Keyes Company Defendant, requests that the Court enter its order staying this action and compelling arbitration pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 3 (2009) or in the alternative The Keyes Company requests that the Court dismiss Counts 2 of the Complaint for failure to state a cause of action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and as grounds therefore states:

### Motion to Compel Arbitration

Pursuant to paragraph 16 of Purchase and Sale Contract attached to the complaint as exhibit A, [the *Purchase Contract*] the Plaintiff agreed to arbitrate "all controversies, claims and other matters in question arising out of or relating to this transaction or this Contract or its breach."

Section 3 of the Federal Arbitration Act requires the Court to grant an application to compel compliance with an arbitration agreement, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement."

Because the arbitration agreement is contained in an exhibit to the Complaint, no issue exists regarding the making of the agreement, and because the Complaint asserts a claim against The Keyes Company that arises out of or relates to the transaction or the contract, the Plaintiff should be required to arbitrate her claims in accordance with the arbitration agreement.

### Motion to Dismiss Count Two of the Complaint

Count Two of the Complaint asserts a claim against The Keyes Company for violation of the Florida Deceptive and Unfair Trade Practices Act, Chapter 501, Florida Statutes (2009) (*FDUTPA*) based upon the payment of an "administrative brokerage fee" or a "professional service fee" that was paid to The Keyes Company at the closing of the Plaintiff's real estate purchase pursuant to the Purchase Contract and the

Plaintiff's brokerage agreement contained in Buyer's Disclosure attached to the Complaint as exhibits A and C, respectively, that the Plaintiff alleges was an "unearned fee." (Complaint, paragraphs 29-33).

Count Two of the Complaint fails to state a cause of action under FDUTPA because Section 501.212(1) and (6), of FDUTPA expressly exempts acts or practices that are specifically permitted by state law and exempts the acts and practices of a licensed real estate broker that violate the section 475.42, Florida Statutes (2009) the Florida real estate brokerage licensing law; and the acts or practices of The Keyes Company are either specifically permitted by Chapter 475, Florida Statutes or constitute a violation of Section 475.42.

## Introduction

The Plaintiff, Keren Peters, (*Buyer*) is a buyer who agreed to pay the Defendant, The Keyes Company, (*Broker*) a licensed real estate broker, a "professional service fee" of $499 [Exhibit C, Complaint] in conjunction with its efforts to find a property for the Buyer to purchase. As a result of the Broker's efforts, the Buyer entered into a purchase and sale contract [Exhibit A, Complaint] (the *Contract*) that closed on August 12, 2009. At the closing, the Broker was paid the professional service fee by the Buyer as agreed as well as a brokerage commission from the seller pursuant to paragraphs 19 and 21 of the Contract [See Closing Statement, Exhibit B, Complaint]. In this action, the Buyer claims that the payment of the professional service fee by Buyer violated the Federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607 because either no settlement services were actually rendered by the Broker for the fee or the services that were performed by Broker were duplicative.

## Argument

### Arbitration of this Dispute is Required under the Contract

The FAA declares that "[a] written provision in any …. contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ….. shall be valid, irrevocable, and enforceable save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In this context, the phrase "involving commerce" has been construed to extend to the broadest permissible exercise of Congress' Commerce Clause power. *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359 (Fed. 11th Cir. 2005).

The strong federal policy in favor of enforcing arbitration embodied in the FAA, *Dean Witter Reynolds, Inc.* v. *Byrd,* 470 U.S. 213, 217 (1985); *Klay v. All Defendants,* 389 F.3d 1191, 1204 (11th Cir. 2004); *Davis v. Southern Energy Homes, Inc.,* 305 F.3d 1268, 1272 (1lth Cir. 2002) requires that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983); *MS Dealer Servs. Corp.* v. *Franklin,* 177 F.3d 942, 947 (1lth Cir. 1999).

Under the FAA, a court is directed to grant a motion to compel arbitration if it is satisfied that "that the issue involved in such suit or proceeding is referable to arbitration under such an agreement". 9 U.S.C. § 3; *John B. Goodman Ltd. P'ship v. THF Constr., Inc.,* 321 F.3d 1094, 1095 (11th Cir. 2003); *see Shearson/Am. Express, Inc.* v. *McMahon,* 482 U.S. 220,226 (1987) ("[A] court *must* stay its proceedings if it is satisfied that an issue before it is arbitrable . . . .") (emphasis added). In making this determination, the issues before the court are limited to the making and performance of the arbitration agreement. *See Prima Paint Corp.* ***v.*** *Flood & Conklin Mfg.,* 388 U.S. 395, 404 (1967).

In this action, there is no issue regarding the making of the arbitration agreement because it is included in the Contract attached to the Plaintiff's Complaint as an exhibit. [Exhibit A, Complaint].

Paragraph 16 of the Contract governs "Dispute Resolution." Paragraph 16 of the Contract requires that "all controversies, claims and other matters in question arising out of relating to this transaction or this Contract will be settled" "through neutral binding arbitration in the county where the Property is located" "in accordance with the Rules of the American Arbitration Association." It provides:

> 298  **16. DISPUTE RESOLUTION:** This Contract will be construed under Florida law. All controversies, claims and other matters in
> 299  question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:
> 300  (a) **Disputes concerning entitlement to deposits made and agreed to be made: Buyer** and **Seller** will have 30 days from the
> 301  date conflicting demands are made to attempt to resolve the dispute through **mediation**. If that fails, Escrow Agent will
> 302  submit the dispute, if so required by Florida law, to Escrow Agent's choice of arbitration, a Florida court or the Florida Real
> 303  Estate Commission ("FREC"). **Buyer** and **Seller** will be bound by any resulting award, judgment or order. A broker's
> 304  obligation under Chapter 475, FS and the FREC rules to timely notify the FREC of an escrow dispute and timely resolve the
> 305  escrow dispute through mediation, arbitration, interpleader or an escrow disbursement order, if the broker so chooses,
> 306  applies to brokers only and does not apply to title companies, attorneys or other escrow companies.
> 307  (b) **All other disputes: Buyer** and **Seller** will have 30 days from the date a dispute arises between them to attempt to
> 308  resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding **arbitration**
> 309  in the county where the Property is located. The arbitrator may not alter the Contract terms or award any remedy not
> 310  provided for in this Contract. The award will be based on the greater weight of the evidence and will state findings of fact
> 311  and the contractual authority on which it is based. If the parties agree to use discovery, it will be in accordance with the
> 312  Florida Rules of Civil Procedure and the arbitrator will resolve all discovery-related disputes. Any disputes with a real
> 313  estate licensee or firm named in Paragraph **19** will be submitted to arbitration only if the licensee's broker consents in
> 314  writing to become a party to the proceeding. This clause will survive closing.
> 315  (c) **Mediation and Arbitration; Expenses:** "Mediation" is a process in which parties attempt to resolve a dispute by
> 316  submitting it to an impartial mediator who facilitates the resolution of the dispute but who is not empowered to impose a
> 317  settlement on the parties. Mediation will be in accordance with the rules of the American Arbitration Association ("AAA") or
> 318  other mediator agreed on by the parties. The parties will equally divide the mediation fee, if any. "Arbitration" is a process in
> 319  which the parties resolve a dispute by a hearing before a neutral person who decides the matter and whose decision is
> 320  binding on the parties. Arbitration will be in accordance with the rules of the AAA or other arbitrator agreed on by the
> 321  parties. Each party to any arbitration will pay its own fees, costs and expenses, including attorneys' fees, and will equally
> 322  split the arbitrators' fees and administrative fees of arbitration.

The Contract also provides that "[e]xcept for brokerage agreements, no prior or present agreements will bind buyer, seller or broker unless incorporated into this Contract," [paragraph 13], that the Contract is binding on the heirs, administrators, executors, personal representatives and assigns (if permitted) of buyer, seller and broker,"[paragraph 14], and that the seller and buyer instruct the closing agent "to disburse at closing the full amount of the brokerage fees as specified in separate brokerage agreements with the parties…" [paragraph 19].

In this action, the Plaintiff's claim arises out of and relates to the payment of the "professional service fee" that was paid to Broker pursuant to paragraphs 19 and 21 of the Contract. The Broker submits that any issue related to this payment falls within the ambit of the broad scope of the arbitration agreement to arbitrate "all controversies, claims and other matters in question arising out of relating to this transaction or this Contract."

Because of the strong federal policy in favor of enforcing arbitration agreements, a motion to arbitrate should not be denied unless it can be said "with positive assurance" that the arbitration clause cannot be interpreted to cover the dispute. *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960). As expressed by the Court in *Moses H. Cone,* 460 U.S. at 24-25:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

### The Broker's Acts are Exempt under FDUTPA

FDUTPA provides in material part:

**501.212 Application**

This part does not apply to:
(1) An act or practice required or specifically permitted by federal or state law.

\* \* \*

(6) An act or practice involving the sale, lease, rental, or appraisal of real estate by a person licensed, certified, or registered pursuant to chapter 475, which act or practice violates s. 475.42 or s. 475.626.

The Keyes Company is a Florida real estate brokerage company that is expressly authorized to charge a fee for brokerage services as defined in Chapter 475, Florida Statutes (2009), [the *Florida Brokerage Act*] and as a registered real estate brokerage company, it is

a member of the only class that is permitted under Florida law to charge a fee for real estate brokerage services.

The Florida Brokerage Act declares invalid any agreement to pay a commission or compensation for any brokerage services unless the broker has complied with the license requirements of Chapter 475 at the time the act is performed (Section 475.41) and makes it a third degree felony if any operates as a broker without being duly licensed (Section 475.42(1)(a)

The Florida Brokerage Act, Section 475.01(1)(a) defines "Broker," in material part as:

> "a person who, for another, and for a compensation or valuable consideration directly or indirectly paid or promised, expressly or impliedly, or with an intent to collect or receive a compensation or valuable consideration therefor, appraises, auctions, sells, exchanges, buys, rents, or offers, attempts or agrees to appraise, auction, or negotiate the sale, exchange, purchase, or rental of business enterprises or business opportunities or any real property or any interest in or concerning the same,* * * or who takes any part in the procuring of sellers, purchasers, lessors, or lessees of business enterprises or business opportunities or the real property of another, * * *or who directs or assists in the procuring of prospects or in the negotiation or closing of any transaction which does, or is calculated to, result in a sale, exchange, or leasing thereof, and who receives, expects, or is promised any compensation or valuable consideration, directly or indirectly therefor…."

Under the Florida Brokerage Act, a real estate broker may "enter into a brokerage relationship as either a transaction broker or as a single agent with potential buyers" and sellers (475.278 (1)(a)); and all brokers are presumed to be "operating as transaction brokers unless a single agent or no brokerage relationship is established, in writing, with a customer." (475.278(2)).

The Florida Brokerage Act defines "transaction broker" as "a broker who provides limited representation to a buyer, a seller, or both, in a real estate transaction, but does not represent either in a fiduciary capacity or as a single agent," (475.01(l); that is required to dealing honestly and fairly; account for all funds; use skill, care, and diligence in the transaction; disclose all known facts that materially affect the value of

residential real property and are not readily observable to the buyer; and presenting all offers and counteroffers in a timely manner, unless a party has previously directed the licensee otherwise in writing, (475.278(2)).

Under the facts as alleged by the Plaintiff, Broker respectfully submits that under the brokerage agreement contained in the Buyer's Disclosure, Exhibit C to the Complaint, the Broker was acting as a "transaction broker" entitled to receive a "professional services fee" for its services as a transaction broker pursuant to its agreement with the Plaintiff and that the receipt of this fee is expressly permitted by the Florida Brokerage Act and is therefore exempt under FDUTPA. See *Eirman v. Olde Discount Corp.*, 697 So.2d 865 (Fla. 4 DCA 1997); *3B TV. Inc. v. State,* 794 So.2d 744, 747 (Fla. 1 DCA 2001).

If, however, Broker received the professional services fee as a result of any "fraud, misrepresentation, concealment, false promises, false pretenses, dishonest dealing by trick, scheme, or device, culpable negligence, or breach of trust in any business transaction" such act or practice would constitute a violation of Section 475.42, Florida Statutes which expressly provides in material part:

> **475.42 Violations and penalties.**--
>
> (1) VIOLATIONS.—
>
> ***
>
> (f)  A person may not commit any conduct or practice set forth in s. 475.25(1)(b), (c), (d), or (h).

Section 475.25 (1)(b) provides in material part:

> **475.25 Discipline.**--
>
> (1)  e commission may deny an application for licensure, registration, or permit, or renewal thereof; may place a licensee, registrant, or permittee on probation; may suspend a license, registration, or permit for a period not exceeding 10 years; may revoke a license, registration, or permit; may impose an administrative fine not to exceed $5,000 for each count or separate offense; and may issue a reprimand, and any or

all of the foregoing, if it finds that the licensee, registrant, permittee, or applicant:

* * *

(b) Has been guilty of fraud, misrepresentation, concealment, false promises, false pretenses, dishonest dealing by trick, scheme, or device, culpable negligence, or breach of trust in any business transaction in this state or any other state, nation, or territory; has violated a duty imposed upon her or him by law or by the terms of a listing contract, written, oral, express, or implied, in a real estate transaction; has aided, assisted, or conspired with any other person engaged in any such misconduct and in furtherance thereof; or has formed an intent, design, or scheme to engage in any such misconduct and committed an overt act in furtherance of such intent, design, or scheme. It is immaterial to the guilt of the licensee that the victim or intended victim of the misconduct has sustained no damage or loss; that the damage or loss has been settled and paid after discovery of the misconduct; or that such victim or intended victim was a customer or a person in confidential relation with the licensee or was an identified member of the general public.

As a violation of Section 475.42, the alleged act of Broker would be exempt under FDUTPA because it would be exempt under 501.212(6), Florida Statutes, as an "act or practice involving the sale … of real estate by a person licensed, certified, or registered pursuant to chapter 475, which act or practice violates s. 475.42."

Based upon the foregoing argument and authority, The Keyes Company requests that the Court grant this motion, abate the action and compel the Plaintiff to arbitrate her claims in accordance with the arbitration agreement, or in the alternative dismiss Count 2 of the Complaint for failure to state a cause of action for a violation of FDUPTA.

    /s/ Bruce D. Friedlander
Bruce D. Friedlander, Fla Bar 304816
Email  bdf@friedlanderkamelhair.com
Friedlander & Kamelhair, PL
3300 N. University Drive  Ste 4
Coral Springs, Florida 33065-6300
Ph. (954) 893-1376;  (305) 371-7386
Fax (954) 893-1376
Attorney for The Keyes Company

# TABLE OF AUTHORITY

## CASES

*3B TV. Inc. v. State,* 794 So.2d 744, 747 (Fla. 1 DCA 2001 --------------------------------- 9
*Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359 (Fed. 11th Cir. 2005) -------------- 4
*Davis v. Southern Energy Homes, Inc.,* 305 F.3d 1268, 1272 (1lth Cir. 2002) ------------ 4
*Dean Witter Reynolds, Inc.* v. *Byrd,* 470 U.S. 213, 217 (1985) ------------------------------ 4
*Eirman v. Olde Discount Corp*., 697 So.2d 865 (Fla. 4 DCA 1997) ------------------------ 9
*John B. Goodman Ltd. P'ship v*. *THF Constr., Inc.,* 321 F.3d 1094, 1095 (11th Cir. 2003) ------------------------------------------------------------------------------------------------ 5
*Klay v. All Defendants,* 389 F.3d 1191, 1204 (11th Cir. 2004) ------------------------------ 4
*Moses H Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983) ------- 4
*Moses H. Cone* ------------------------------------------------------------------------------------- 7
*MS Dealer Servs. Corp.* v. *Franklin,* 177 F.3d 942, 947 (1lth Cir. 1999) ------------------ 4
*Prima Paint Corp.* **v.** *Flood* & *Conklin Mfg.,* 388 U.S. 395, 404 (1967) -------------------- 5
*Shearson/Am. Express, Inc.* v. *McMahon,* 482 U.S. 220,226 (1987) ----------------------- 5
*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582-83 (1960) ------------------------------------------------------------------------------------------------ 7

## STATUTES

475.01(l) ------------------------------------------------------------------------------------------------ 8
**475.25** -------------------------------------------------------------------------------------------------- 9
475.278 (1)(a) ------------------------------------------------------------------------------------------ 8
475.278(2) ---------------------------------------------------------------------------------------------- 8
**475.42** -------------------------------------------------------------------------------------------------- 9
475.42(1)(a) -------------------------------------------------------------------------------------------- 8
**501.212** ------------------------------------------------------------------------------------------------ 7
9 U.S.C. § 2 -------------------------------------------------------------------------------------------- 4
9 U.S.C. § 3 -------------------------------------------------------------------------------------------- 5
Chapter 475, Florida Statutes (2009) ------------------------------------------------------------ 7, 8
Federal Arbitration Act (FAA), 9 U.S.C. § 3 (2009) -------------------------------------------- 1
Federal Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607 ----------- 2
Unfair Trade Practices Act, Chapter 501, Florida Statutes (2009) ---------------------------- 2

## RULES

Rule 12(b)(6) of the Federal Rules of Civil Procedure ----------------------------------------- 1

10-CV-60162-Altonaga-Brown

CERTIFICATE OF SERVICE

I CERTIFY that on March 16, 2010, I electronically filed this, Defendant The Keyes Company's Motion to Compel Arbitration, to Dismiss for Failure to State Cause of Action and Memorandum of Law with the Clerk of Court by using CM/ECF system which will send a notice of electronic filing to

Steven R. Jaffe, Mark S. Fistos;
Farmer, Jaffe, Weissing, et al, PL, 425 N.
Andrews Ave Ste 2,
Ft Lauderdale Fl 33301
(954) 524-2820;
Fax (954) 524-2822;
email steve@pathtojustice.com;
mark@pathtojustice.com

/s/     Bruce D. Friedlander