UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 10-60162-CIV-ALTONAGA/Brown

**KEREN PETERS**,

    Plaintiff,

vs.

**THE KEYES COMPANY**,

    Defendant.

_____/

**ORDER**

**THIS CAUSE** came before the Court upon Defendant, The Keyes Company's Motion to Compel Arbitration and Stay Action or Dismiss Count 2 of Complaint (the "Motion") [D.E. 14], filed March 16, 2010. The Court has carefully reviewed the parties' written submissions and the applicable law.

**I.  BACKGROUND**

This case arises from a dispute over a brokerage fee in a real estate contract. Plaintiff, Keren Peters ("Peters"), signed a sale and purchase agreement on July 4, 2009 (the "Purchase Contract") to purchase a piece of real property from Bank United. (*See* Compl. [D.E. 1], Ex. A at 8). The broker was The Keyes Company (*see id.* ¶ 19); it did not sign the Purchase Contract (*see* Compl. ¶ 15). The Purchase Contract authorizes the closing agent to disburse the "brokerage fees" at closing to The Keyes Company. (*See* Compl., Ex. A ¶ 19). It also authorizes The Keyes Company to collect a separate "administrative brokerage fee." (*See id.* ¶ 21). Peters alleges the administrative brokerage fee violates the Real Estate Settlement Procedures Act of 1974 and the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

Case No. 10-60162-CIV-ALTONAGA/Brown

The Keyes Company's rights and duties under the Purchase Contract, in addition to its fees, are: (1) if Peters defaults, The Keyes Company shall receive one-half of Peters's deposit up to the full amount of the brokerage fees (*see id.* ¶ 15); (2) The Keyes Company may place a lien on the property to ensure payment for its brokerage services (*see id.* ¶ 21); (3) Peters and Bank United release The Keyes Company from all liability arising from (a) Peters's or Bank United's misstatements or failure to perform contractual obligations and (b) The Keyes Company's performance of any service, at the request of Peters or Bank United, other than brokerage services (*see id.* ¶ 18); (4) The Keyes Company's liability for damages is limited to its brokerage commission (*see id.* ¶ 21); (5) Peters, Bank United, and The Keyes Company are bound by the Purchase Contract (*see id.* ¶ 14); and (6) except for brokerage agreements, no prior agreements bind Peters, Bank United, and The Keyes Company (*see id.* ¶ 13).

The Purchase Contract also contains an arbitration provision (the "Arbitration Provision"), which provides:

> 16. DISPUTE RESOLUTION: This Contract will be construed under Florida law. All controversies, claims and other matters in question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:
>
> (a) Disputes concerning entitlement to deposits made and agreed to be made: . . . .
>
> (b) All other disputes: Buyer and Seller will have 30 days from the date a dispute arises between them to attempt to resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration in the county where the Property is located. . . . **Any disputes with a real estate licensee or firm named in Paragraph 19 will be submitted to arbitration only if the licensee's broker consents in writing to become a party to the proceeding**. This clause shall survive closing.
>
> (c) Mediation and Arbitration; Expenses: . . . .

2

(*Id.* ¶ 16) (emphasis added).

The Keyes Company moves to compel arbitration based on the Arbitration Provision; alternatively, it moves to dismiss the FDUTPA claim (Count II).

## II.  MOTION TO COMPEL ARBITRATION

Peters asserts The Keyes Company has no right to compel arbitration because: (1) the Arbitration Provision allows only the buyer and seller to compel arbitration; and (2) The Keyes Company is not a third-party beneficiary of the Purchase Contract.  The Court agrees.

In *Nestler-Poletto Realty, Inc. v. Kassin*, 730 So. 2d 324 (Fla. 4th DCA 1999), the residential sale and purchase contract between the buyer and the seller

> provided in its paragraph 16 that as for all disputes other than those concerning deposits, buyer and seller will resolve disputes by mediation, and failing that, by neutral binding arbitration.  It also provided in the same paragraph 16 that "Any disputes with a real estate licensee . . . will be submitted to arbitration only if the licensee's broker consents in writing to become a party to the proceeding."

*Id.* at 325 (alteration in original).  The broker signed the contract under the brokerage clause.  *Id.* at 326.  The court held: (1) the broker was not a party to the entire contract merely because he signed under the brokerage clause; and (2) "the arbitration provisions apply to the broker only as to the paragraph outlining the broker's rights and duties and the acknowledgment that the broker could not be forced into arbitration against its will." *Id.*; *accord Taylor v. Steckel*, 944 So. 2d 494, 496–97 (Fla. 3d DCA 2006) ("We agree that the sentence requiring a broker's consent to arbitrate applies only to prevent a broker from being forced to arbitrate against its will where its rights and duties are implicated.").

The *Kassin* court also noted "[n]on-parties to a contract containing an arbitration clause cannot compel parties to a contract to arbitrate unless" the non-parties are third-party beneficiaries

Case No. 10-60162-CIV-ALTONAGA/Brown

of the contract. 730 So. 2d at 326 (citing *Tartell v. Chera*, 668 So. 2d 1105 (Fla. 4th DCA 1996)). The *Kassin* broker was not a third-party beneficiary of the buyer's and the seller's agreement because the contract was not intended to primarily and directly benefit the broker: the broker's rights under the contract were limited to its role as a broker. *Id.*

Similarly, in *Century Land Development, L.P. v. FFL Development, L.L.C.*, No. 07-14377-CIV-MOORE (S.D. Fla. Feb. 19, 2008) (order denying motion to compel arbitration), the real estate contract contained the following arbitration provision:

> (b) All other disputes: Buyer and Seller will have 30 days from the date a dispute arises between them to attempt to resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration [sic] . . . . Any disputes with a real estate licensee . . . will be submitted to arbitration only if the licensee's broker consents in writing to become a party to the proceeding.

*Id.* at *3 (emphasis omitted). Noting the similarity between this language and the arbitration provision in *Kassin*, the court held that the arbitration provision "simply states that a broker cannot be forced into arbitration without their consent, and does not give the broker an independent right to compel arbitration." *Id.* at *4. The court also held the broker was not a third-party beneficiary of the buyer's and the seller's agreement. *Id.* The broker signed the contract only as a broker; and the contract existed "to benefit and protect the buyer and seller of the parcel, not the real estate agents." *Id.* The court further noted "the agent's principal contract would be their listing agreements or some equivalent entered into with either the buyer or seller." *Id.*

Here, unlike *Kassin* and *Century Land Development*, The Keyes Company has not signed the Purchase Contract; it cannot claim it is a signatory to any portion of the Purchase Contract, let alone the Arbitration Provision. Moreover, just as in *Kassin* and *Century Land Development*, the Arbitration Provision provides "[a]ny disputes with a real estate licensee or firm . . . will be

submitted to arbitration only if the licensee's broker consents in writing to become a party to the proceeding." (Compl., Ex. A ¶ 16). This language merely protects the broker — The Keyes Company — from arbitration against its will. In addition, the first sentence of paragraph 16(b) authorizes only "Buyer and Seller" to mediate or arbitrate "all other disputes." *Cf. Kassin*, 730 So. 2d at 325 (noting the contract provided *buyer and seller* would resolve all other disputes through arbitration). Thus, the Arbitration Provision does not give the The Keyes Company an independent right to compel arbitration.

Neither is The Keyes Company a third-party beneficiary of the Purchase Contract. The Keyes Company's rights under the Purchase Contract relate solely to its role as a broker: (1) The Keyes Company will receive its brokerage fees, either at closing or through alternate means; (1) The Keyes Company cannot be held liable in excess of its brokerage fees; and (3) no other agreements, except brokerage agreements, bind the parties. *Cf. id.* at 326 (noting the broker's limited rights). That the Purchase Contract briefly mentions the broker's rights in six paragraphs — out of twenty-one — does not mean the Purchase Contract exists primarily and directly to benefit The Keyes Company. In addition, the Purchase Contract envisions the parties signed separate brokerage agreements. *Cf. Century Land Dev.*, No. 07-14377-CIV-MOORE, at *4 (noting the broker's principal contract would be its listing agreement or some equivalent). Except as a broker, The Keyes Company is "purely an incidental participant" in the Purchase Contract. *Kassin*, 730 So. 2d at 326.

### III.  MOTION TO DISMISS

**A.    Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. —, 129

5

Case No. 10-60162-CIV-ALTONAGA/Brown

S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**B.   Analysis**

The Keyes Company moves to dismiss Count II for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Keyes Company asserts its conduct is exempt under two sections of the FDUTPA: Florida Statutes Sections 501.212(1) and 501.212(6).

   1.   The Section 501.212(1) Exemption

Section 501.212(1) exempts from the FDUTPA "[a]n act or practice required or specifically permitted by federal or state law." The Keyes Company does not argue its administrative brokerage fee is required by federal or state law; but it asserts the administrative brokerage fee is "expressly permitted by the Florida Brokerage Act," FLA. STAT. §§ 475.001–475.813. (Def.'s Mot. to Compel Arbitration [D.E. 14] at 8).

The Keyes Company has cited the definitions of "broker" and "transaction broker" under the Florida Brokerage Act, *see* FLA. STAT. §§ 475.01(1)(a), (l); the presumption all brokers are transaction brokers, *see id.* § 475.278(1); and the duties of a transaction broker, *see id.* § 475.278(2). None of these sections specifically permits a separate administrative brokerage fee. The Keyes Company has also cited two Florida cases; but they do not hold the Florida Brokerage Act permits a separate administrative brokerage fee. *See Eirman v. Olde Disc. Corp.*, 697 So. 2d 865, 866 (Fla. 4th DCA 1997) (affirming the dismissal of a FDUTPA claim because the alleged conduct was permitted by federal law); *3B TV Inc. v. State*, 794 So. 2d 744, 747–48 (Fla. 1st DCA 2001) (discussing whether a bingo game promotion was valid under Florida Statute Section 849.094). In short, The Keyes Company has not cited any provision of, or case interpreting, the Florida Brokerage Act that specifically permits it to charge a separate administrative brokerage fee. Thus, The Keyes

Case No. 10-60162-CIV-ALTONAGA/Brown

Company has not demonstrated its conduct falls within section 501.212(1).

    2.    <u>The Section 501.212(6) Exemption</u>

Section 501.212(6) exempts from the FDUTPA "[a]n act or practice involving the sale, lease, rental, or appraisal of real estate by a person licensed, certified, or registered pursuant to chapter 475, which act or practice violates s. 475.42 or s. 475.626." FLA. STAT. § 501.212(6). This exemption applies only to a person licensed, certified, or registered under chapter 475 of the Florida Statutes. Peters has not alleged The Keyes Company is licensed, certified, or registered under chapter 475.[1] And The Keyes Company has offered nothing more than its assertions that it is licensed, certified, or registered under chapter 475. *See, e.g.*, *Sea Shelter IV, LLC v. TRG Sunny Isles V, Ltd.*, No. 08-21767-CIV, 2009 WL 692469, at *6 (S.D. Fla. Mar. 17, 2009) (allowing a defendant to show, at the motion to dismiss stage, that "it is licensed under Chapter 475 by submitting records regarding its license from the Florida Department of Business and Professional Regulation"). The Keyes Company therefore has not demonstrated its conduct falls within section 501.212(6).

### IV. CONCLUSION

Consistent with the foregoing analysis, it is

**ORDERED AND ADJUDGED** that the Motion **[D.E. 14]** is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 21st day of April, 2010.

*Cecilia M. Altonaga*
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record

---

[1] The Keyes Company asserts Peters "has admitted that Broker is a licensed Florida real estate broker" (Def.'s Reply in Supp. of Mot. to Compel Arbitration [D.E. 26] at 10), but the Court has been unable to locate any such admission in the Complaint [D.E. 1]. And any statement Peters may have made in her Response [D.E. 22] is not relevant to whether *the Complaint* states a claim.